## THE PARLIN & ORENDORFF COMPANY
### v.
## MOSES HUTSON.

*Opinion filed October 25, 1902.*

1. EVIDENCE—*when deposition is admissible under stipulation.* Under a stipulation providing that depositions taken in a previous foreclosure case may be read in evidence by either party, and that "either party shall have the right to use such additional evidence as either may desire and *as shall be held competent under the pleas therein,*" objections may be made to the "additional" evidence but not to the depositions.

2. SAME—*when objection that deposition was not properly identified is not well taken.* An objection that a deposition read in evidence was not properly identified as the one which counsel had stipulated might be read from the record of a former foreclosure case then on file in the Appellate Court is not well taken, where the transcript of the record sent to the Appellate Court in the former case, and which contained the deposition read in evidence, was identified by the circuit clerk.

3. SAME—*when rule that grantor's testimony cannot impeach notary's certificate does not apply.* The rule that the grantor's testimony, although slightly corroborated, that the deed was a forgery is not sufficient to overcome the notary's certificate, does not apply where the notary testifies that he does not know the grantor and had never seen him, and that while the seal and signature to the certificate of acknowledgment were genuine, yet he had at one time prepared a certificate of acknowledgment in blank for the grantee to some instrument.

4. SURETIES—*when surety is released.* The extension of the time of payment to a specified date and the surrender of collateral security, both being done without the knowledge or consent of the surety, releases the latter, even though the payee is induced to act by reason of the principal's forgery of the surety's name to a deed purporting to convey the surety's farm to the principal, but of which deed the surety was ignorant.

5. SAME—*when surety is released although contract is illegal.* If a contract to extend the time of payment and to surrender collateral security, made without the knowledge or consent of the surety, is executed, the surety is released notwithstanding the contract is illegal. (*Galbraith* v. *Fullerton*, 53 Ill. 126, and *Silmeyer* v. *Schaffer*, 60 id. 479, distinguished.)

APPEAL from the Circuit Court of Franklin county; the Hon. E. E. NEWLIN, Judge, presiding.

This is a bill in chancery filed in the Franklin circuit court by the appellee, Moses Hutson, to quiet his title to certain lands which he claims to own in that county, by setting aside a deed executed to T. I. Galloway, dated September 18, 1895, alleged to be a forgery, and also to set aside certain mortgages executed by the latter based upon said forged deed; also to set aside a deed executed by Moses Hutson to one I. R. Spilman, alleged to have been obtained through fraud. The Parlin & Orendorff Company, I. R. Spilman, Carrie Rogers, Harry C. Miller and A. C. Terhune, the holders of the mortgages, were made parties defendant. They answered the bill, and the Parlin & Orendorff Company filed a cross-bill, to which answers were filed, and upon replications to the answers to the original and cross-bill the cause was heard by the chancellor, and a decree rendered holding the deed purporting to be executed by Moses Hutson to T. I. Galloway to be a forgery, and the mortgages by Galloway to the Parlin & Orendorff Company and others without authority and therefore no lien upon the lands in question, and holding that said company was not entitled to the relief prayed for in its cross-bill. The court further held against said company upon an issue of former suit pending, and found that the deed from Moses Hutson to I. R. Spilman was not obtained by fraud, but that the grantee therein took the title in trust to secure certain loans made by Miller and Rogers to T. I. Galloway, and refused to cancel the mortgage made by I. R. Spilman to them. To reverse that decree the Parlin & Orendorff Company prosecutes this appeal, the only errors assigned upon the record being: "First, the court erred in its finding and decree concerning plea of the Parlin & Orendorff Company of former suit pending; second, the court erred in overruling motion to suppress the deposition of Moses Hutson; third, the court erred in overruling objections to the testimony of Moses Hutson and others that was read from purported record from Appellate Court with-

out identification of record; fourth, the court erred in its finding and decree against appellant, the Parlin & Orendorff Company, on original bill; fifth, the court erred in its finding and decree against appellant, the Parlin & Orendorff Company, on the cross-bill; sixth, the court erred in admitting improper evidence for Moses Hutson."

From the pleadings in the cause and the evidence introduced upon the hearing the following facts appear: In 1895 William Hutson and C. E. Hutson, his son, (the son and grandson of complainant,) were dealers in farm machinery at Benton, Illinois, under the firm name of Hutson & Son. Later T. I. Galloway became interested in the firm and it was known as Hutson & Galloway, and still later Galloway assumed entire control of the business in his own name. While the business was conducted by Hutson and Galloway a note for $2000 was given to the Parlin & Orendorff Company, signed by T. I. Galloway, William Hutson and C. E. Hutson as principals and E. G. Hutson and Moses Hutson as sureties. This note not being paid when it became due, the company sent its agent to Benton on March 14, 1896, to collect or secure the same. T. I. Galloway was then in sole control of the business and had assumed the indebtedness of the firm. He had in his possession, which he exhibited to the agent of the company, a deed from Moses Hutson to himself, dated September 18, 1895, but not yet recorded, purporting to convey to him the property in controversy, consisting of two hundred and forty acres of land. He also had in his possession, which he exhibited with the deed, a contract, in substance reciting that such a deed had been made and that Galloway had assumed the payment of the firm debts. The names of William, C. E. and Moses Hutson were attached to the instrument as parties of the first part and that of Thomas I. Galloway as party of the second part, and the contract purported to be acknowledged before a notary public. Upon examining the unrecorded deed to Galloway and the accompanying contract,

the agent for the Parlin & Orendorff Company on March 14, 1896, made a settlement with Galloway, whereby the entire indebtedness to the company was adjusted on the following basis: Galloway gave his note for $1690.86, signed by himself alone, and also a note for $656.16, signed by himself as principal and E. G. Hutson as surety, and to secure the payment of these two notes he executed a mortgage upon the lands in controversy, to which he claimed title by virtue of the deed from Moses Hutson. The company received the two notes thus secured, as it supposed, and surrendered to Galloway the $2000 note, which was signed by Moses Hutson as a surety. Moses Hutson was at that time residing on the lands conveyed by the mortgage and had no knowledge of this settlement. On October 6, 1897, there appeared of record an instrument, which all the parties to this cause concede to be a forgery of T. I. Galloway, purporting to release the foregoing mortgage to the Parlin & Orendorff Company, signed "Parlin & Orendorff, per C. L. Post, Manager." Thereafter, on October 9, 1897, Galloway executed another mortgage on part of the lands in controversy to Carrie Rogers, by which he obtained $500, and on the 26th of the same month a third mortgage on another part of these same lands to Harry C. Miller to secure a loan of $600. These loans were negotiated by I. R. Spilman. On December 3 Galloway executed still another mortgage on all of said land to secure a loan of $1100 from A. C. Terhune. Rogers and Miller, soon after making their loans, heard that Galloway did not own the lands mortgaged to them, and reported their information to Spilman, who called upon Galloway and was informed that Moses Hutson had not, in fact, signed the deed to Galloway. Spilman, accompanied by Galloway, then called upon Moses Hutson, who stated to them that he never made a deed or mortgage to his lands to any one. Feeling assured that the deed to Galloway was a forgery, Spilman, with Galloway's assistance, then (December 16,

1897,) induced Moses Hutson to make a conveyance to him (Spilman) to the same lands covered by the deed to Galloway and the mortgage to the Parlin & Orendorff Company, Moses Hutson acting upon the belief that he was thereby securing the claim of the Parlin & Orendorff Company to the extent of $1100. The purpose of Spilman in taking the conveyance was, however, to secure the Rogers and Miller loans, which he had negotiated. Upon getting the deed Spilman then executed a mortgage, dated December 18, 1897, to Carrie Rogers and Harry C. Miller to secure their two loans. Other facts material to the consideration of the case are stated in the opinion.

W. F. SPILLER, and W. H. HART, for appellant.

I. R. SPILMAN, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The first ground upon which appellant seeks to reverse the decree below is, that the chancellor erred in refusing to sustain a plea of former suit pending, and the contention is, that in a foreclosure suit against Galloway, to which Moses Hutson had been made a party, the issue as to the validity of the deed of Moses Hutson to Galloway, made in this cause, was also made there. No evidence was introduced by appellant to sustain its plea of *lis pendens*. On the contrary, there was introduced in evidence the order of the Appellate Court reversing the former suit and remanding it to Franklin county, dismissing without prejudice the cross-bill of Moses Hutson, which raised the issue as to the validity of Galloway's deed, and expressly reserving to him the right to try that question in some other manner. That judgment was rendered March 11, 1901, and the bill in this cause was not filed until April 24, following. The chancellor could not do otherwise than find against appellant on its plea.

It is next contended that the chancellor committed error in admitting the evidence of Moses Hutson. He

did not testify in person, but counsel for complainant offered to read to the court his deposition taken in the foreclosure suit against Galloway, which was objected to because it was taken without proper notice. The objection was overruled on the ground that the parties had stipulated that all depositions taken in the foreclosure suit should be read in this cause if the parties desired to do so. The stipulation, after setting forth that the deposition taken by the special master in the former suit, now on file in the Appellate Court, may be read in evidence in this case by either party, concludes: "And that either party shall have the right to use such additional evidence as either may desire and as shall be held competent under the pleas therein." Counsel for appellant construe the language above quoted to mean that either party might in this cause raise any technical objection to the depositions which could have been made in the former suit. The language is not susceptible of such a construction. Under the agreement, objections might have been made to the competency of "*any additional evidence*" other than the depositions taken in the former case, but it precludes either party from objecting to the depositions on file in the former case, and the chancellor properly so held. It is again contended that the deposition was not properly identified as the one which counsel had stipulated might be introduced in this cause. The transcript of the record sent to the Appellate Court in the former case, containing this deposition, was identified by the circuit clerk, and the chancellor properly held that the objection was not well taken. Other objections were raised to the identity of said Appellate Court record, but they are technical and need not be further noticed.

Upon the merits of the cause the first controversy is whether or not the chancellor properly held the deed claimed to have been executed by Moses Hudson to Galloway was a forgery. If no error was committed in finding it to be a forgery, it is conceded that the mortgages

made by Galloway, based upon it, are also void.  In his deposition Moses Hutson states positively and unequivocally that he did not execute such an instrument, and had no knowledge of its existence until about the time the foreclosure proceeding against Galloway was begun. C. E. Hutson, whose name appears upon the paper as an attesting witness to the deed, also testified that he did not sign it.  Evidence was introduced concerning other transactions on the part of Galloway which were conceded to be forgeries and which tended to impeach his general reputation for honesty.  When in Galloway's presence, Moses Hutson was asked if he had ever made a deed or mortgage to these lands to any one.  He replied that he had not, and Galloway did not contradict or question the statement.  Moreover, his confessions to and his conduct when with Mr. Spilman were to the effect that his deed from Moses Hutson was not genuine.  The acknowledgment to the deed purports to have been taken before Jasper Summers, notary public.  Upon its face it appears regular.  The notary's testimony, on direct examination, is, in substance, that the signature and seal attached are genuine, but he has no recollection concerning the transaction.  Upon cross-examination he said he was not acquainted with Moses Hutson and had never seen him that he knew of.  He was then asked:

Q. "You had known Thomas I. Galloway for some time, and had business transactions with him?

A. "Yes, sir, a little.

Q. "Did you ever sign an acknowledgment in blank for him?

A. "I cannot say that I did not, but my best impression is that I did.  He came to me with a deed to make out the acknowledgment in blank.

Q. "He came to you with a deed to make out the acknowledgment in blank and put your seal to it?

A. "No, sir; I don't recollect it that way at all.

Q. "How do you remember that it was?

A. "My recollection is this: I can't say for sure whether it was a deed, mortgage or what it was; I can't say which; but at one time over at Dr. Hutson's I did an acknowledgment of something or other. I cannot remember what it was."

It will be noticed that his answer to this very important question is that his best impression was that he did sign an acknowledgment in blank for Thomas I. Galloway. In his subsequent examination he somewhat modifies his statement, but leaves the impression that he was attempting to defend his own reputation as a notary and to be a somewhat reluctant witness. It is true, as counsel say, that before a deed will be set aside as a forgery the proof must show, substantially and clearly, that the allegation of forgery is true, and the testimony of the grantor, even if slightly corroborated, is not sufficient to overcome the certificate of acknowledgment of the deed; but when facts appear which take away from the notary and his certificate the verity and the integrity which ordinarily attach to certificates of that character, then the rule insisted upon will not apply. If an acknowledgment to a deed had been made by the notary in blank, his testimony that the signature and seal were his, although absolutely true, was not inconsistent with the theory that the deed was a forgery.

The contract which was introduced in evidence, dated February 10, 1896, mentioned in the foregoing statement, purporting to be signed by Moses Hutson and others, if genuine, would tend to support the contention that the deed to Galloway was actually executed. But the original of that instrument is not before us. R. E. Hickman, the notary public who took the acknowledgment of it, by his evidence neither adds to nor takes from the force of his certificate. He says he drew it from Galloway's dictation. William Hutson and Moses Hutson, whose names appear thereto, say that the contract which was in fact

executed contained no reference whatever to any supposed conveyance of real estate by Moses Hutson to Galloway.   If their testimony is true, it was changed after its execution.   It appears to have been interlined.   The witnesses do not designate what the interlineations were or where they occurred in the original paper, which is not before us.   It is therefore impossible for us to pass upon it with intelligence.   Taking into consideration the testimony casting discredit on the Galloway deed and its certificate of acknowledgment, we think the chancellor was justified in finding it to be a forgery and in setting it aside as a cloud upon complainant's title.

Counsel for appellant say that, even if the deed to Galloway is a forgery, the chancellor should have rendered a judgment against Moses Hutson for the amount of the indebtedness (still unpaid) and which was due to appellant on the note of $2000 on March 14, 1896, namely, $1690.86, and interest thereon.   This judgment is asked upon the ground that inasmuch as the appellant company surrendered up the $2000 note, which was the evidence of his indebtedness, and took in its stead the void mortgage by Galloway, it was the duty of the court to place the parties as they were before the fraudulent mortgage of Galloway was executed.   Counsel for appellee, answering this contention, says that whatever obligation Moses Hutson owed the appellant was that of a surety, and that the act of the appellant company in surrendering the note upon which he was a surety and taking in its stead the ... released him from his obligation, under the rule th "the contract of a surety is one that should be constr ed strictly, and in no case can he be held liable beyond the terms and conditions of the contract to which he gave his assent; and any binding contract entered into between the principal debtor and the creditor, which works a substantial change in the original contract, when made without the consent of the surety, will release the surety." (*Dodgson* v. *Henderson,*

113 Ill. 360.)   From the evidence it appears that the appellant, on March 14, 1896, held the note of $2000 signed by Galloway as principal and Moses Hutson and others as sureties, and that there was due thereon, principal and interest, over $2300;  that the appellant then held as collateral security for this note the notes of farmers in that county for farm implements which had been purchased by them, amounting to $1200;  that the total indebtedness of Galloway was then put in the form of two notes, one for $1690.86, signed by him alone, payable on the following January 1, and the other for $656.56, signed by Galloway as principal and E. G. Hutson as surety; that these two notes were then pretended to be secured by a mortgage of that date upon the lands in controversy, the mortgage being executed by Galloway, as the owner; that upon the delivery of these two notes to the appellant company the $2000 note, as well as the farmers' notes, amounting to $1200, which appellant held as collateral, were surrendered to Galloway.   The evidence also tends to show that at this time Moses Hutson was residing upon these lands, and the appellant company failed to prove that he had any knowledge of this transaction.    Here the time of payment of the debt for which Moses Hutson was surety was extended beyond the maturity of his note more than eight months, the extension being made by the principal to a specified date without the knowledge or the assent of Moses Hutson, the surety. In pursuance of this agreement to extend, the appellant company made no further effort to collect its debt, but waited until the new note was past due and then began the foreclosure proceeding.   Not only was the payment extended without the surety's knowledge or consent, but collateral paper amounting to $1200 was surrendered back to Galloway.   The extension of time to a specified date and the surrender of the collateral security without the consent of the surety clearly worked a substantial change in the original contract, and, under the foregoing

rule, released the surety. The appellant company by that act put it beyond its power to place Moses Hutson in as favorable a position as he was in before the new mortgage and notes were given.

It is contended by counsel for appellant that the arrangement by which the old note was surrendered and the new note given, which was attempted to be secured by the void mortgage, was an illegal contract, and being so, will not work a release of the surety,—citing and relying upon *Galbraith* v. *Fullerton*, 53 Ill. 126. If on the 14th day of March, 1896, the parties had entered into an illegal *and unexecuted* contract to extend the time, then, under the authority of that case and also the case of *Silmeyer* v. *Schaffer*, 60 Ill. 479, the surety would not have been released. In those cases it was held that where the payee of a note entered into an agreement with the principal, without the knowledge or consent of the surety, to extend the time of payment of the note, and the contract for the extension was not only unexecuted but was one based upon an illegal consideration, the agreement did not release the surety from liability on the note. But here, aside from the fact that the collateral notes, amounting to $1200, were surrendered to the principal, the contract to extend the time of payment was actually performed and the rights of the surety were jeopardized by the extension. In such case,—that is, where the contract, though illegal, is executed and made without the knowledge or consent of the surety,—he is released from further liability on the note. *Danforth* v. *Semple*, 73 Ill. 170. We are satisfied the chancellor committed no error in failing to enter judgment against Moses Hutson for the principal and interest due on the note of $1690.86.

Whether the decree as to the deed from Moses Hutson to I. R. Spilman was justified by the evidence is not before us for decision. The cross-bill of the Parlin & Orendorff Company does not question the validity of that deed, nor does it claim that it was executed by Moses

Hutson as an instrument in the nature of a mortgage, for its benefit. On the contrary, it recognizes its validity as a security for Miller and Rogers, and simply alleges that it is subject to their claim under the deed of September, 1895, and the mortgage executed to it. Nor does the assignment of errors raise any question as to the validity of that deed. Moses Hutson files no cross-errors. Therefore the decision of the court below on that deed is not here questioned.

The decree of the circuit court is affirmed.

*Decree affirmed.*