## Commercial Loan & Trust Company, Appellant, v. John B. Mallers, Appellee.

### Gen. No. 13,884.

1. NEGOTIABLE INSTRUMENTS—*when unauthorized indorsement binding.* An unauthorized indorsement of a promissory note becomes binding upon a subsequent ratification.

2. NEGOTIABLE INSTRUMENTS—*when cancelled obligation enforceable.* An indorsement upon a promissory note which has been cancelled and surrendered is revived and becomes enforceable upon a repudiation by the indorser of an indorsement upon a promissory note given in liquidation of the cancelled obligation: provided, however, that the indorser has not by virtue of the cancellation of his original obligation surrendered collateral and thus changed his position. *Held,* under the facts of this case, that the evidence tending to show such a change of position by the indorser was inadequate.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the October term, 1907. Reversed and judgment here. Opinion filed June 11, 1908.

**Statement by the Court.** The American Fire Extinguisher Company at the times of the transactions involved in this litigation kept its bank account and did its banking business with appellant. Appellee was president and his son, Edward B. Mallers, secretary and treasurer of the American Fire Extinguisher Company. On May 8, 1895, the Extinguisher Company gave its promissory note to appellant for $2,500, payable ninety days after date. The payment of this note appellee guaranteed by suitable indorsement. When the note matured, August 8, 1895, neither the maker nor appellee paid, but Edward B. Mallers, a son of appellee and the secretary and treasurer of the maker, represented to appellant that his father, appellee, was in Europe, and had not left any funds for its liquidation, but had given authority to him, the son, to give a new note and indorse his father's name thereon as

guarantor.  Appellant cancelled and surrendered the matured note, taking in its place a new note of like amount, tenor and effect, dated August 9, 1895, payable in ninety days from its date, on which note the son indorsed appellee's name as guarantor.

The declaration counted on each of the two notes, and comprised also the common counts.  To this declaration appellee pleaded the general issue and special pleas denying his indorsement of the second note, or that it was indorsed with his authority, or that he guaranteed its payment, or requested appellant to accept the note, and averring that the note of May 8, 1895, had been fully paid.

The cause was first tried with the intervention of a jury, which being unable to agree, the cause was thereafter, with the consent of all the parties, submitted to the court, for trial without a jury.  On this last trial before the court, it found the issues in favor of appellee and entered a judgment of *nil capiat*, and this review is sought for the purpose of reversing that judgment.

Errors are assigned on the admission and rejection of certain evidence and in failing to hold as the law certain propositions tendered, in not granting a new trial and in not arresting the judgment; also in not finding the issues for appellant and entering judgment in its favor accordingly.

HORACE G. STONE and IRA C. WOOD, for appellant.

CHARLES B. STAFFORD, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

While it is true that there is no direct testimony of the authority of appellee's son to sign his father's name to the note of August 9, 1895, or to bind him as a guarantor thereof when the note of May 8, 1895, on which he was obligated as guarantor, was cancelled and surrendered by appellant in faith of the son's having such authority from the father, yet there is proof

in the record that appellee recognized the obligation which the son's action in indorsing the note imputed to him, by a promise on his part to meet that obligation by paying the note. Such evidence at least tended to prove a ratification of the son's action, and if the actions of appellee were sufficient as a ratification, then his liability became fixed as firmly as if his indorsement had been authorized in the first instance. But be this as it may, it is patent that as to appellant the appellee is liable on one of the notes. If the second note was indorsed without authority and such indorsement has not been subsequently ratified by appellee, then he remains liable to appellant upon the first note, for in contemplation of law that note has not been paid. As said in Eagle Bank v. Smith, 5 Conn. 74, "Whether he was or was not their agent, the legal consequences are precisely the same. The defendants cannot take benefit of a pretended payment of the note by a stranger, if the payment was fictitious and not actual." Appellee cannot disaffirm the action of his son in indorsing his name upon the new note, and thereby escape the obligation of paying it, and affirm the son's action as paying the note in faith of the unauthorized indorsement. So that appellee, in repudiating his liability upon the second note, assumes the obligation to discharge his liability arising from his guarantee of the first note. Henderson v. Cummings, 44 Ill. 325; Dodge v. Tullock, 110 Mich. 480; Tasker v. Kenton Ins. Co., 59 N. H. 438.

The Circuit Court erred in not holding as a proposition of law, "that as Mallers' name was used on the new note to take up the old note which also bore his name, his repudiation of the use of his name on the new note is a repudiation of the entire transaction, which leaves the note of May 8, 1895, unpaid."

Such being the law, worked no hardship to appellee. As guarantor of the first note he was obligated to pay it. Repudiating the action of his son in signing his name as guarantor to the second note, resulted in hold-

ing him to his original obligation. This in no way operated to enlarge his liability.

Another defense, however, is interposed, which if sustained by the proofs would have the effect of discharging appellee's liability upon the first note. Appellee insists that he had no knowledge of the giving of the second note until after he had surrendered to the American Fire Extinguisher Company the security which he had received from it in indemnification of his liability as guarantor of the first note; that the surrender of such security was made in faith that the first note had been paid, and after the exhibiting of it to him marked paid and cancelled. But the law proceeds upon the theory that the party invoking such defense has been damaged by the surrender of security, or a lien, of a monetary value commensurate with the liability assumed, which the surety is led to believe at the time of such surrender has been discharged. In this record, however, we are unable to discover that anything of value was surrendered by appellee to the maker of the first note on the assumption of the verity of the surface appearances that the note had been paid. Appellee's testimony on this subject is very unsatisfactory and does not rise to the dignity of proof of the surrender of any security of any tangible character or of any appreciable value. His testimony lacks definiteness as applied to the note transaction. He first makes a general statement that he never indorsed for the American Fire Extinguisher Company without taking collateral. He then testified, referring to security taken on the first note guaranteed by him, "I forget what it was; I think it was the premium Rothschild properties." (R. p. 82.) Again, R. p. 85, Mallers testifies, in answer to a question from his counsel: "The American Fire Extinguisher Company through Mr. Brackett gave me collateral upon which I made this indorsement. This collateral was demanded from me when I returned, upon which I demanded the note, that they surrender this note to me, marked paid, in the reg-

ular way, through the bank, upon which I delivered the collateral to him." This comprises all the testimony in relation to collateral received or restored. It falls far short of proving that any collateral of an appreciable value was either given as security for the liability incurred from guaranteeing the first note, or surrendered in the belief that such liability had been extinguished by payment.

The judgment of the Circuit Court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Note: Since the filing of the foregoing opinion the appellant, on motion, withdrew its petition for rehearing and the order reversing and remanding was vacated, the judgment of the Circuit Court reversed and judgment entered in this court in favor of appellant for $2,500, with interest at seven per cent. from August 9, 1905, and costs of both courts.