# Elva M. Boulter, Appellee, v. Joliet National Bank, Appellant.

## Gen. No. 6,722.

1. BILLS AND NOTES, § 307*—*when payment operates to release collateral.* Where a note of which one is a joint maker is paid by the making of a cash payment and the giving of a new note of her comaker for the balance and the note is marked paid is canceled and returned by the payee, to the comaker who delivers it to plaintiff, the new note, not being signed by plaintiff, creates an individual obligation of the comaker which is a different indebtedness, in character and legal effect, from the original note and which is not the obligation of plaintiff, and the payee of the original note cannot, as against plaintiff and without her consent, retain, as collateral to secure the payment of such new note, collateral which she had deposited with the payee to secure the payment of the original note.

2. BILLS AND NOTES, § 378*—*when presumption of payment arises.* The presumption that the indebtedness for which a note was given was paid is raised by the act of the payee in stamping the note paid, canceling it and returning it to the maker.

3. BILLS AND NOTES, § 196*—*when extension of time of payment releases joint maker.* A joint maker of a note is released by the act of the payee in extending the time of payment without her knowledge or consent, and is entitled to the return of collateral deposited by her in the payee's hands to secure the payment of the note.

4. TROVER AND CONVERSION, § 3*—*when refusal to release collateral constitutes conversion.* After the release of a comaker, the refusal of the payee bank to return to her, upon her demand, collateral which had been deposited by her with the bank to secure the payment of the note, constitutes a legal conversion of such collateral by the bank.

5. TROVER AND CONVERSION, § 39*—*when evidence establishes conversion in refusing to release collateral.* In trover by a joint maker of a note against the payee bank to recover the value of stock deposited as collateral for a note which had been canceled and returned to her comaker, who had executed a new note for the balance due on the original, it is not error to instruct the jury that if they believed from the evidence that the cancellation

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of the original note and the taking of a new note signed by the other maker was intended by the bank as a release and discharge of plaintiff from her obligation on the original note, they should find the issues in her favor.

6. INTEREST, § 26*—*what interest may be recovered on conversion*. In trover to recover the value of stock deposited as collateral, which defendant refused to return upon demand after plaintiff had been released, but sold, plaintiff is entitled to interest from the date of such refusal, which was the time of the conversion, not from the date the stock was sold.

7. APPEAL AND ERROR, § 1220*—*when party cannot complain of error in instruction*. One is in no position to complain on appeal of an error in an instruction which was in his favor.

Appeal from the County Court of Will county; the Hon. GEORGE J. COWING, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed April 21, 1920.

GARNSEY, WOOD & LENNON, for appellant.

BULKLEY, MORE & TALLMADGE and MURPHY & ANDERSON, for appellee.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

In this case the appellee, Elva M. Boulter, brought suit in the county court of Will county in trover to recover the value of, five shares of the capital stock of Gerlach-Barklow Company, which it was alleged she owned, and the appellant, Joliet National Bank, converted to its own use. The declaration which was filed in the case consisted of one count and contained the usual averments in trover, to which the appellant filed a general issue. There was a trial by jury which resulted in a verdict in favor of the appellee for $550 damages. The court entered judgment on the verdict and this appeal is prosecuted from the judgment.

The evidence shows that John Boulter, the father

of the appellee, a commercial reporter for Bradstreet & Company, in the course of his business frequently visited Joliet, and often called at the appellant bank on business, and otherwise, and had a checking account there. On November 23, 1914, he obtained a loan from the bank of $300 upon a promissory note for that amount, payable 3 months after date, signed by himself and his daughter, the appellee. As collateral security for the payment of this note, the appellee also assigned to the bank her five shares of stock in the Gerlach-Barklow Company. The note was not paid when it became due, and was carried by the bank until February 23, 1916. Boulter then took up the note by paying the bank $100 and giving his individual note for $200, payable 3 months after date, and the five shares of stock in question were then retained by the bank as collateral security for the payment of this note; and the bank canceled the $300 note, marked it paid and turned it over to John Boulter, who returned it to the appellee. The appellee testified that when she received the canceled note from her father, he told her that he had paid it, and that she then asked her father for her certificate of stock which had been pledged, and that he told her he had left it in the bank for safe-keeping, but promised to return it to her, but never did so. Boulter afterwards disappeared. Appellee also testified that the first information she had that the bank was holding her stock as security for other notes of her father was contained in the letter requesting a return of her stock, in which letter the bank informed her that it was holding the stock as collateral for an indebtedness of her father amounting to $404, and money which the bank had furnished him. On receipt of this letter from the bank, appellee again wrote a letter to the bank demanding a return of the stock certificate, for the return of which she had in her previous letter already sent to the bank the necessary postage

and registration fee. Other demands were made by her on the bank for a return of the stock. All the demands however were refused, the bank claiming the right to hold the stock as security for the remaining indebtedness of John Boulter. About March 21 she received notice from the bank that the stock would be sold at public auction on the 21st day of April, 1917, to pay the indebtedness referred to. On April 30 following, she was notified that the stock had been sold pursuant to the notice given her, and $500 had been realized therefor; that of the amount realized, $304.03 had been applied to pay the notes of her father, which the bank held, and that the bank was holding the balance of $195.97 subject to her order.

It is claimed by the appellant bank that it could legally hold the stock in question as collateral security for the payment of all of Boulter's indebtedness, but at least for the payment of the $200 note, because this indebtedness was an unpaid balance of the indebtedness for which she pledged her stock. It is apparent, however, that the original indebtedness, namely, the $300 note, was a joint indebtedness of appellee and her father. The $200 note created an individual indebtedness of her father for which appellee had not in any way obligated herself, the note having been executed by her father on his own responsibility and of his own accord, and therefore constituted his individual obligation. The $200 note, therefore, was a different indebtedness in character and legal effect. The question to be determined, and which appears to be decisive of the rights of the parties, is whether the $300 note, for which the bank received the stock from appellee as collateral security, was really paid and canceled. Did the bank receive the $100 in cash, and Boulter's individual $200 note in payment and discharge of the $300 note? All the evidence in the case seems to indicate that it did. The fact alone that the bank stamped the note

as paid, canceled it and returned it to the makers as paid, raised the presumption that the indebtedness for which the note was given was paid. *Walker v. Douglas,* 70 Ill. 445; *Sutphen v. Cushman,* 35 Ill. 186. And there is no evidence in the record which can be considered as in conflict with this presumption. If the $300 note for which appellee pledged her stock as collateral was paid, then appellee was entitled to a return of the stock at the time the note was paid. But even on the assumption that the $200 note given by Boulter must be considered as an unpaid part of the original indebtedness for which appellee pledged her stock, and that the time of payment was merely extended thereon, the acceptance by the bank of this $200 note from Boulter, extending the time of payment, released the appellee and entitled her to a return of her stock. Her obligation on the $300 note was that of surety, and Boulter was the principal debtor. The extension of the time of payment of the indebtedness, which was without her knowledge or consent, therefore operated as a discharge of her obligation as surety for the payment of the indebtedness. *Parlin & Orendorff Co. v. Hutson,* 198 Ill. 389; *Home Nat. Bank v. Waterman's Estate,* 134 Ill. 461; *Dodgson v. Henderson,* 113 Ill. 360; *Crossman v. Wohlleben,* 90 Ill. 537; *Myers v. First Nat. Bank of Fairbury,* 78 Ill. 257; *Danforth v. Semple,* 73 Ill. 170; *Montague v. Mitchell,* 28 Ill. 481; *Kennedy v. Evans,* 31 Ill. 258. And the rule is well settled that when a third person pledges his property as security for the payment of a debt or obligation of another, such property also stands in the position of a surety of the debtor; and hence, any change in the contract of suretyship which will discharge a surety will also release and discharge the property, which is held as collateral. *Price v. Dime Sav. Bank,* 124 Ill. 317; *Highland Park State Bank v. Sheahen,* 149 Ill. App. 229; *Merchants & Farmers State Bank v. Sheridan,* 156

Ill. App. 30. We are of opinion, therefore, that the appellee's stock was released as collateral security when the bank accepted the $100 in cash and the $200 note from Boulter in payment and discharge of the note signed by the appellee, and canceled the same, and that she was entitled to a return of the stock in question at the time she made a demand therefor on January 28, 1917; and that the refusal of the bank to return the stock constituted a legal conversion of the same by the bank.

Appellant contends that the giving of the second instruction for appellee was error. By this instruction the jury were told that if they believed from the evidence that the cancellation of the original, or $300 note, signed by the appellee, and the taking of a new note signed by John Boulter was intended by the bank as a release and discharge of the appellee from her obligation of the original note, then they should find the issues in her favor. Under section 118 of the Negotiable Instruments Act (J. & A. ¶ 7758), the obligation incurred by the signing of a promissory note is discharged by the intentional cancellation of such note by the holder. The only obligation which the evidence shows that the appellee assumed was the signing of the $300 note; and it was for the payment of this obligation that she pledged her stock. If, therefore, it was the intention of the bank, by canceling the $300 note and taking a new note from John Boulter, to release and discharge the appellee from her obligation on the $300 note, such release and discharge would necessarily result as a matter of law to release her stock which she pledged for such obligation, and the appellee was entitled to have the same returned to her on demand, and by refusing to return it the appellant became liable. And it was proper under these circumstances to submit to the jury the question of fact whether the transaction embodied in the instruction was intended to be a release and

discharge of appellee's obligation. The instruction relative to the amount of interest which the appellee was entitled to was erroneous in assuming that the sale was the conversion of the stock in question, and that appellee was entitled to interest from the date of sale. But appellant was not injured by this error. The conversion of the stock actually occurred several months prior to the date of sale, and appellee was legally entitled to interest from the prior date, and to more interest than this instruction allowed her. The error injured the appellee and not the appellant, and the appellant is therefore not in position to complain. The judgment is affirmed.

*Judgment affirmed.*