## Rosa Hood, Appellee, v. James Hollister, Appellant.

### Gen. No. 7,760.

1. NEGOTIABLE INSTRUMENTS——*liabality of cosigner of note as joint maker.* One who signed a note upon its face along with the person to whom the money it was given to secure was loaned was a joint maker not a guarantor and was liable to the same extent unless released or discharged as a comaker.

2. NEGOTIABLE INSTRUMENTS—*when payee not negligent in accepting forged renewal note.* The payee of a promissory note given as security for a loan and signed by defendant as a joint maker was not acting at her peril in accepting a new note in renewal if the signature of the joint maker was a forgery, it being enough if she exercised reasonable care by inspection and comparison of the original with the second one.

3. NEGOTIABLE INSTRUMENTS—*when payee accepting forged renewal note entitled to recover on surrendered original.* One who accepted a renewal note purporting to be signed by the same joint makers that signed the original and surrendered the original was, if not negligent in accepting the second note, entitled to recover on the original upon it appearing that the signature of one of the persons on the new note was a forgery.

4. NEGOTIABLE INSTRUMENTS—*rights of payee accepting forged renewal note not affected by subsequent notice of forgery.* The rights of a payee of a note given in renewal of a former note and purporting to be signed by the same two joint makers if not negligent in failing to discover that one of the signatures was a forgery were not affected by subsequent matters which put her on notice of the character of the paper, and the fact that she thought she had no claim on the first note would not affect her right to recover on it when she ascertained that its possession had been obtained by fraud.

5. NEGOTIABLE INSTRUMENTS—*acceptance without notice of forged*

*renewal note as satisfaction of surrendered original.* The acceptance by the payee of a note signed by defendant as a joint maker of a renewal note upon which the purported signature of defendant was a forgery, without knowledge of such forgery, did not constitute a satisfaction of the first note and the payee could thereafter sue upon the original note.

6. APPEAL AND ERROR—*when exhibit impeaching verdict not part of record reviewable on appeal.* On appeal from a judgment for plaintiff in an action on a promissory note where an affidavit was filed by counsel stating that with the verdict the jury had returned a certain paper attached to the affidavit purporting to indicate the method by which the jury arrived at the amount of the verdict and what purports to be a copy of such paper is set out in the bill of exceptions, the court cannot regard such paper for any purpose where it did not come certified under the hand of the judge and the bill of exceptions does not recite that the jury had such paper attached to the verdict which was returned into open court.

7. NEGOTIABLE INSTRUMENTS—*when recovery against joint maker of note sustained by evidence.* In an action upon a promissory note purporting to have been signed by defendant as a joint maker and also upon a prior note for which the second one was accepted in renewal, where the defense was that defendant's signature to the second note was a forgery, no other verdict than one for plaintiff could well have been rendered, either upon the first note if the second was a forgery or upon the second note if it was found to be genuine.

Appeal by defendant from the Circuit Court of McDonough county; the Hon. GEORGE C. HILLYER, Judge, presiding. Heard in this court at the April term, 1924.    Affirmed.    Opinion filed October 22, 1924.

R. E. LYBARGER and WALLACE A. WALKER, for appellant.

FLACK & KERMAN, for appellee.

MR. JUSTICE CROW delivered the opinion of the court.

Rosa Hood lent to Carl Hollister $300, taking therefor a note bearing 7 per cent interest, dated March 19, 1919, and signed by him and his brother, James Hollister, as averred in the additional count

of the declaration. The note matured January 12, 1920. At the delivery of the note $17.50 was paid as interest for the ten months the note by its terms was to run. In 1920, Carl Hollister requested an extension of time for payment. In reply to this request Mrs. Hood told him to see James Hollister about the security and he said he would and let her know. He went again to her home February 26, 1921, and gave her a new note signed by him and purporting to be signed by James Hollister. The note was dated February 26, 1921, and Carl Hollister promised to pay the interest on the first note from January 21 to that date. He did not do so. She surrendered the first note on delivery of the second. Sometime before maturity of the second note Mrs. Hood saw appellant and told him she must have her money when the note matured. He went to her home and looked at the note and said he did not sign it. On a previous occasion he looked at it and said nothing about not having signed it, but said he would try to find Carl and have him fix it up.

The note not having been paid suit was begun and a declaration filed counting on the last note and the common counts. Appellant filed to the declaration a verified plea denying the execution and delivery of the note. At a subsequent term, by leave, an additional count was filed counting on the first note for $300 with interest at 7 per cent per annum. Again at a subsequent term the additional count was amended, charging that the note counted on "has been lost or destroyed" and no copy of it was filed. To the additional count four special pleas were interposed: (1) release by delivery of the original note to Carl Hollister; (2) payment by acceptance of new note; (3) account stated by acceptance of new note for and on account of the first note; (4) release of appellant from liability on the first note by reason of the extension of time by acceptance of the new note without his knowledge and consent.

Hood v. Hollister, 235 Ill. App. 112.

The cause having been tried by a jury, a verdict was returned for plaintiff for the sum of $400.26. Plaintiff's counsel entered a remittitur of $36.42 upon argument for new trial, and judgment was rendered for plaintiff and against James Hollister for the sum of $363.87 and costs. To reverse the judgment an appeal was perfected to this court.

It must be said of the original transaction between plaintiff and defendant, there was sufficient consideration for the execution of the first note. Appellant was not a guarantor but a joint maker. He was liable to plaintiff to the same extent, unless released or discharged, as his comaker. Carl Hollister desired an extension of time for payment. To procure it he wrote a note, signed it, and it is alleged forged appellant's name as a joint maker. By that means Carl got possession of the original, and plaintiff is to be defrauded of her money if appellant's theory of the law applicable to the facts shall prevail.

It is said in support of this conclusion that plaintiff was negligent in accepting the second note with the forged signature. One cannot read the record of her testimony and find any evidence of negligence imputable to her. The only testimony on that question is from her lips. Her manner of testifying, so far as it can be disclosed by a cold record, manifests no effort or inclination to conceal anything. She says, under cross-examination, she looked at the purported signature of James Hollister on the second note; that she paid particular attention to it and that it looked to her just like the other. Indeed, in general human experience and more particularly in judicial experience, the forger blunders quite as often in studied similarity by tracing and other devises as by careless imitation. That blunder is more likely to deceive a woman of plaintiff's inexperience than a man whose life is devoted to work in banks and other institutions and business requiring constant contact with

signatures on commercial paper. Men of such experience testify as they did in this case to differences in the formation of certain letters constituting a variation from an assumed original. She was not acting at her peril in accepting the new note if it was a forgery. It was enough if she exercised reasonable care by inspection and comparison of the original, admittedly genuine, with that offered as genuine. A reading of the record better than the abstract of it leaves no ground for a conclusion of negligence on her part in accepting the last note.

It is contended plaintiff has barred her right of recovery because she surrendered the first genuine note and accepted the second, a forged note. On this point counsel asked her on cross-examination if she did not surrender it because she had no further claim on it. She explains her attitude with regard to that by saying, "Why shouldn't I have a claim on it, it had not been paid." She explains she required a new note because Carl wanted the money for a year, and the other note for only ten months had matured and she had to have a new one. But she did not know when she accepted the new note it was a forgery, and if she was not negligent, then under the rules of law applicable to the transaction she is entitled to recover. The mind at once is arrested by the pertinent inquiry, why should she knowingly accept a forged note in extension or renewal of one that was genuine? That circumstance alone destroys the contention she knew of the forgery or even suspected it at the time she accepted it.

If anything caused her to press appellant for payment it is not disclosed, except she says she wanted the money to help her daughter. The evidence discloses nothing about Carl Hollister's conduct good or bad except as to this, and that he refused to attend the trial as a witness though served with subpœna by plaintiff. If anything afterward put her

upon notice of the character of the paper, it could not harmfully affect her rights, but might stimulate her to a persistent diligence in collecting it at maturity as she threatened to do. If she did think she had no further claim on the first note it would not affect her right to recover on it when she ascertained its possession had been obtained by fraud.

It is well understood that fraud vitiates every transaction into which it enters. Three special pleas were interposed to the declaration counting on the first note upon which suit was brought: release, payment and discharge of appellant on account of extension of time to Carl Hollister. Before the matter pleaded could operate to bar the action, the transaction must have been a lawful one, or one, though unlawful, was known to be so by appellee; or that she had notice of facts that put her upon inquiry which she failed to pursue to knowledge. The record discloses no such situation. The principal debtor was guilty of fraud. The holder of the paper, under the evidence in the record, is not chargeable with notice of it. Counsel for appellant cite *Parlin & Orendorff Co. v. Hutson,* 198 Ill. 389, as authority against the judgment. In that case the court sustained the contention that "any binding contract entered into between the principal debtor and the creditor, which works a substantial change in the original contract, when made without the consent of the surety, will release the surety." The time of payment of the debt in that case for which Hutson was surety, for a valuable consideration, was extended more than eight months beyond the date of maturity. The parties to the extension had bound themselves by a valid agreement. Collateral paper, which the surety had a right to have applied for his relief, was surrendered by the creditor and thereby the comaker signing as surety was damaged. But that is not the situation here. Mrs. Hood might have brought suit at once on the

genuine note if she had learned of the fraud perpe-trated on her by the delivery of the forged note. Be-ing void she was not bound by it.

The case of *Galbraith v. Fullerton*, 53 Ill. 126, cited and distinguished in the *Parlin & Orendorff* case and *Silmeyer v. Schaffer*, 60 Ill. 479, there cited, render clear this distinction. In the first, upon application of the principals in the note upon agreement they would pay 15 per cent per annum on the note for one year from maturity, it was agreed to extend the time of payment without the knowledge or consent of a surety. A demurrer to this plea was sustained because the agreement pleaded was not legal and bind-ing. It was there held, affirming judgment on demur-rer, if agreement be *nudum pactum*, or illegal, the rights of the creditor will be unimpaired. The doc-trine of this case was affirmed in the *Silmeyer* case, *supra*. *Belleville Sav. Bank v. Bornmam*, 124 Ill. 200, is cited by counsel for appellant as supporting the rule that whether a new note is taken in payment of a former note is one of fact which must be submitted to the jury. The rule is elementary and the discus-sion of it by Mr. Justice Shope in the case cited leaves nothing to be said. But defendant pleaded payment of the old by giving the new note and thereby as-sumed the burden of proving it. If the jury were uninstructed on that point, and it was an issue at the trial, it was an omission of the defendant and not of plaintiff. In the case cited the rule announced by the Pennsylvania court is approved and declared to be in harmony with the rule in Illinois:

"So in Pennsylvania, where it was held that the taking of a renewed note was not a satisfaction of the former bill or note, 'unless it was so intended and accepted by the creditor,' it is said: 'But if so accepted, it is a satisfaction. The *quo animo* in which it was accepted is a matter of fact, which the court cannot take to itself and exclude the jury from a de-cision of it. The intent may often be deduced from

circumstances, though nothing positive was expressed.' ''

But as shown by all the facts not controverted, including the facts alleged and proved by defendant, no inference legally or logically can be drawn that plaintiff accepted the second note as a satisfaction of the first, with knowledge of the circumstances under which the second was executed.

The court gave an instruction for defendant covering this point with which he can certainly find no fault. The *onus* being on defendant to prove his affirmative plea of payment of the first note by delivery and acceptance of the second, the instruction referred to is:

"The court instructs you that the giving and acceptance of a promissory note for a previously existing past due indebtedness is prima facie evidence of the satisfaction of such indebtedness, and to overcome such prima facie evidence it must be affirmatively shown by a preponderance of the evidence that the giving or acceptance of such new note was not intended as a satisfaction of such prior indebtedness.''

The vice of this contention upon the evidence to which this instruction is supposed to apply is: it assumes the note which plaintiff accepted, and which defendant contended discharged the former note, is the genuine note of defendant, for it cannot be successfully maintained that if the note bore the forged signature of the defendant under the evidence in the record as to the circumstances of its delivery and acceptance, it would discharge the first, bearing his genuine signature. Notwithstanding this strong erroneous instruction the jury found for the plaintiff.

The jury returned a verdict for the plaintiff for $400.26. An affidavit was filed by one of counsel for defendant stating that with the verdict they also had returned attached to it a certain paper attached to the affidavit ''purporting to indicate and in fact does indicate, as his affiant verily believes, the method by

which the jury arrived at the amount of their verdict so returned in said court." What purports to be a copy of the paper is set out in the bill of exceptions. This paper does not come to us certified under the hand of the judge as being any part of the proceedings in the cause. It has long been settled that nothing is presented to a reviewing court for adjudication except such matters as are embraced in the record proper and authenticated by the signature of the clerk and the seal of the court in which the cause was heard; and, in addition thereto, such matters as not being part of the record proper are made so by certificate of the presiding judge to a bill of exceptions that, not being part of the record, they actually transpired in the court over which he was presiding. The bill of exceptions does not recite that the jury attached to the verdict returned into open court the paper mentioned in the affidavit. If it had so recited, the paper would be examined for what it might be worth. But we are not at liberty to regard it for any purpose.

The evidence shows both notes were for $300. There was some contention that the first note was for $400. Defendant refused to testify the first note was for $400; and the evidence clearly shows plaintiff loaned Carl $100, which was paid. Be that as it may, plaintiff claimed only $300 and the jury found for her in that sum plus interest. The second note was before them; the first note was not. The verdict was general. No special findings were submitted to them. If they accepted the defendant's contention that the second note was a forgery they should have found· for the plaintiff on the first note. If they rejected his contention they should have found against him on the last. Under the evidence and the law applicable to it no other verdict in consonance with justice could have been returned. Under very similar circumstances the Appellate Court of the First District in

*Commercial Loan & Trust Co. v. Mallers,* 141 Ill. App. 460 (462), by Judge Holdom said:

"Appellee cannot disaffirm the action of his son in indorsing his name upon the new note, and thereby escape the obligation of paying it, and affirm the son's action as paying the note in faith of the unauthorized indorsement. So that appellee, in repudiating his liability upon the second note, assumes the obligation to discharge his liability arising from his guarantee of the first note."

As held in that case, we hold in this, he is liable on one of the notes.

The fourth instruction given at request of defendant gave the jury the law substantially as laid down above. It told the jury "in order to find the issues for the plaintiff in this case, the jury must find from a preponderance of all the evidence that the defendant, James Hollister, signed one or the other, or both of the notes sued upon, or authorized another to sign for him." Whatever error may have intervened in the instructions given or refused this cured all and covered all. No other verdict could rightly have been returned than was returned. The jury saw the witnesses and the parties and had opportunity denied us to judge of the weight to be given their testimony. The court had the same opportunity and approved their finding. The judgment is affirmed.

*Affirmed.*